# Exhibit A

State Court of Fulton County
**E-FILED**
21EV002677
4/30/2021 5:28 PM
Christopher G. Scott, Clerk
Civil Division

GEORGIA, FULTON COUNTY

**DO NOT WRITE IN THIS SPACE**

# STATE COURT OF FULTON COUNTY
### Civil Division

CIVIL ACTION FILE #: _____

JOSEPH CARTER
_____
c/o WITHERITE LAW GROUP; 600 W PEACHTREE
_____
ST NW SUITE 740 ATLANTA, GA 30308
Plaintiff's Name, Address, City, State, Zip Code

vs.

HEARTLAND EXPRESS, INC.OF IOWA
_____
c/o Scott Adams at 3350 Hollowell Pkwy NW
_____
Atlanta   GA            30331
Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [ ] ACCOUNT | PRINCIPAL $_____ |
| [ ] CONTRACT | |
| [ ] NOTE | INTEREST $_____ |
| [ ] TORT | |
| [ ] PERSONAL INJURY | ATTY. FEES $_____ |
| [ ] FOREIGN JUDGMENT | |
| [ ] TROVER | COURT COST $_____ |
| [ ] SPECIAL LIEN | |
| | *********** |
| [ ] NEW FILING | |
| [ ] RE-FILING: PREVIOUS CASE NO. _____ | |

## SUMMONS

TO THE ABOVE NAMED-DEFENDANT:

You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: R. Sean McEvoy
_____
Address: 600 W PEACHTREE ST NW SUITE 740
_____
City, State, Zip Code: ATLANTA, GA 30308                    Phone No.: 470-881-8804

An answer to this complaint, which is herewith served upon you, must be filed within thirty (30) days after service, not counting the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSES MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing or, if desired, at the e-filing public access terminal in the Self-Help Center  at 185 Central Ave., S.W., Ground Floor, Room TG300,  Atlanta, GA 30303.

Christopher G. Scott, Chief Clerk (electronic signature)

_____

***SERVICE INFORMATION:***

Served, this _____ day of _____, 20_____.
_____
DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:
We, the jury, find for _____

_____

This _____ day of _____, 20_____.   _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

State Court of Fulton County
**E-FILED**
21EV002677
4/30/2021 5:28 PM
Christopher G. Scott, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| JOSEPH CARTER; | CIVIL ACTION |
| Plaintiff, | |
| v. | FILE NO. _____ |
| HEARTLAND EXPRESS, INC. OF IOWA; and MARK LAROCQUE; | |
| Defendants. | |

## COMPLAINT FOR DAMAGES

COMES NOW PLAINTIFF, by and through counsel of record, and files this Complaint for Damages showing this Honorable Court as follows:

1.

This is an action for personal injury damages arising out of a collision involving a tractor-trailer operated by Defendants HEARTLAND EXPRESS, INC. OF IOWA (hereinafter "HEARTLAND EXPRESS") and its driver, MARK LAROCQUE, and Plaintiff's vehicle that occurred on Prosperity Way in the Lowe's Distribution Private Lot on August 20, 2020 in Floyd County, Georgia.

### PARTIES, JURISDICTION, AND VENUE

2.

HEARTLAND EXPRESS is a corporation.

3.

HEARTLAND EXPRESS may be served with summons and complaint through the Georgia Non-Resident Motorist Statute.

**COMPLAINT FOR DAMAGES – Page 1**

4.

HEARTLAND EXPRESS may be served with summons and complaint through its Registered Agent: Scott Adams at 3350 Hollowell Pkwy NW, Atlanta, GA, 30331.

5.

The Federal Motor Carrier Safety Regulations require that every interstate motor carrier (of property or passengers) shall designate a process agent, upon whom court papers may be served in any legal proceeding brought against such motor carrier. This designation shall be made for each State, in which the motor carrier is authorized to operate and for each State traversed during such operations. HEARTLAND EXPRESS has designated NATIONAL RESIDENT AGENT SERVICES to be its designated agent of service of process in the State of Georgia.

6.

HEARTLAND EXPRESS may be served with summons and complaint through the BOC-3 Designated Process Agent:  David Lee Cates at 2300 Henderson Mill Rd Suite 330 Atlanta Ga, 30345.

7.

HEARTLAND EXPRESS may be served with summons and complaint through its registered agent for service of process: Scott Adams at 3350 Hollowell Pkwy NW, Atlanta, GA, 30331.

8.

Once served with process, HEARTLAND EXPRESS is subject to the jurisdiction of this Court.

9.

HEARTLAND EXPRESS was properly served with process in this civil action.

10.

HEARTLAND EXPRESS was sufficiently served with process in this civil action.

11.

Venue in the above-styled civil action is proper in this County and Court as to HEARTLAND EXPRESS.

12.

At all times material to this Complaint, HEARTLAND EXPRESS was registered with the United States Department of Transportation's Federal Motor Carrier Safety Administration as a for-hire interstate motor carrier of property.

13.

At all times material to this Complaint, the United States Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA") assigned HEARTLAND EXPRESS with USDOT No. 134697.

14.

At the time of the collision described in this Complaint, Defendant HEARTLAND EXPRESS was registered with the FMCSA as an interstate motor carrier of property.

15.

At the time of the collision described in this Complaint, Defendant HEARTLAND EXPRESS was registered with the FMCSA as an interstate motor carrier of property and was operating a motor vehicle with a gross vehicle weight rating of 26,001 or more pounds.

16.

At all times material hereto, HEARTLAND EXPRESS was subject to the Federal Motor Carrier Safety Regulations and all subsequent amendments thereto, promulgated, approved, and adopted by the United States Department of Transportation ("USDOT") contained in Title 49 of the Code of Federal Regulations.

17.

At all times material hereto, HEARTLAND EXPRESS was not permitted to operate a motor vehicle over the public roadways unless it as a motor carrier had obtained and had in effect the minimum levels of financial responsibility as set forth in 49 CFR § 387.9.

18.

At the time of the collision described in this Complaint, MARK LAROCQUE was operating a tractor-trailer.

19.

At the time of the collision described in this Complaint, MARK LAROCQUE was operating a tractor/truck owned by Defendant HEARTLAND EXPRESS.

20.

At the time of the collision described in this Complaint, MARK LAROCQUE was operating a trailer owned by Defendant HEARTLAND EXPRESS.

21.

At the time of the collision described in this Complaint, MARK LAROCQUE was operating a tractor-trailer with the permission of Defendant HEARTLAND EXPRESS.

22.

MARK LAROCQUE was responsible for the safe and reasonable operation of a commercial motor vehicle over the public roadways within and throughout the State of Georgia.

23.

At all times material hereto, MARK LAROCQUE was subject to the Federal Motor Carrier Safety Regulations and all subsequent amendments thereto, promulgated, approved, and adopted by the United States Department of Transportation contained in Title 49 of the Code of Federal Regulations as approved.

24.

At the time of the collision described in this Complaint, Defendant MARK LAROCQUE was a permissive driver.

25.

Defendant MARK LAROCQUE resides at 50 Savannah Lane, Crossville, TN 38555 and may be served with a copy of the summons and complaint at this address.

26.

Once served with process, MARK LAROCQUE is subject to the jurisdiction and venue of this Court.

27.

MARK LAROCQUE was properly served with process in this civil action.

28.

MARK LAROCQUE was sufficiently served with process in this civil action.

29.

Venue in the above-styled civil action is proper in this County and Court as to MARK LAROCQUE.

## FACTS

30.

Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

31.

On August 20, 2020, the Defendant MARK LAROCQUE was operating the tractor-trailer on Prosperity Way.

32.

On August 20, 2020, the Defendant MARK LAROCQUE was operating the tractor-trailer on Prosperity Way waiting to enter Lowe's Distribution Private Lot.

33.

On August 20, 2020, the Defendant MARK LAROCQUE was operating the tractor-trailer on Prosperity Way in the Lowe's Distribution Private Lot.

34.

On August 20, 2020, at the same time the Plaintiff JOSEPH CARTER in his tractor-trailer on Prosperity Way in the Lowe's Distribution Private Lot, waiting in line, behind the Defendant.

35.

On August 20, 2020, suddenly and without warning, the Defendant's tractor-trailer starts to reverse towards Plaintiff's tractor-trailer.

36.

On August 20, 2020, Defendant's trailer slammed into the Plaintiff's tractor-trailer.

37.

On August 20, 2020, Defendant's trailer slammed into the Plaintiff's tractor-trailer, causing damage to his tractor/truck and injury to his person.

38.

Diagram No. 1 below is a not to scale diagram depicting the collision described in this Complaint.





Diagram No. 1

39.

Officer Webb investigated this collision described in this Complaint.

40.

Officer Webb concluded that the collision described in this Complaint was solely caused by Defendant MARK LAROCQUE.

41.

Defendant MARK LAROCQUE violated of OCGA § 40-6-240 at the time of the collision described in this Complaint, which caused the collision described in this Complaint.

42.

Defendant HEARTLAND EXPRESS conducted its own investigation into the cause of the subject collision.

43.

Defendant HEARTLAND EXPRESS concluded that Defendant MARK LAROCQUE violated of OCGA § 40-6-240 at the time of the collision described in this Complaint.

44.

Defendant HEARTLAND EXPRESS concluded that Defendant MARK LAROCQUE violated of OCGA § 40-6-240 at the time of the collision described in this Complaint, which caused the collision described in this Complaint.

45.

Defendant HEARTLAND EXPRESS concluded that Defendant MARK LAROCQUE was the sole cause of the subject collision.

46.

No act or failure to act on the part of any Plaintiff caused or contributed to the cause of the collision described in this Complaint.

47.

No act or failure to act on the part of any third party caused or contributed to the collision described in this Complaint.

48.

No act or failure to act on the part of any third party caused or contributed to the injuries suffered by Plaintiff in the collision described in this Complaint.

49.

No act or failure to act on the part of a Plaintiff caused or contributed to the cause of his claimed injuries.

50.

No act or failure to act on the part of any third party caused or contributed to the collision described in this Complaint.

51.

Plaintiff was an innocent victim of the collision described in this Complaint.

52.

The collision described in this Complaint caused Plaintiff to suffer injuries, losses, and damages.

53.

Defendant HEARTLAND EXPRESS agrees that Defendants should fully and fairly compensate Plaintiff for all injuries, losses, and damages that Plaintiff proves were more likely than not caused by the collision described in this Complaint.

54.

Defendant MARK LAROCQUE agrees that Defendants should fully and fairly compensate Plaintiff for all injuries, losses, and damages that Plaintiff proves were more likely than not caused by the collision described in this Complaint.

55.

Defendant MARK LAROCQUE was an employee of HEARTLAND EXPRESS at the time of the collision described in this Complaint.

56.

Defendant MARK LAROCQUE was acting in the course and scope of his employment with Defendant HEARTLAND EXPRESS at the time of the collision described in this Complaint.

57.

Defendant MARK LAROCQUE was an agent of HEARTLAND EXPRESS at the time of the collision described in this Complaint.

58.

Defendant MARK LAROCQUE was acting in the course and scope of his agency with Defendant HEARTLAND EXPRESS at the time of the collision described in this Complaint.

## COUNT I - LIABILITY OF DEFENDANT MOTOR CARRIER

## HEARTLAND EXPRESS, INC. OF IOWA

59.

Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

60.

HEARTLAND EXPRESS was the owner of the truck described in this Complaint.

61.

HEARTLAND EXPRESS was the owner of the trailer described in this Complaint.

62.

HEARTLAND EXPRESS was the motor carrier responsible for the hiring, training qualifying and supervising of all drivers operating its trucks, including for MARK LAROCQUE.

63.

HEARTLAND EXPRESS negligent in the following ways:

a.     Negligently inspecting the tractor-trailer that Defendant MARK LAROCQUE was operating at the time of the collision described in this Complaint;

b.     Negligently maintaining the tractor-trailer that Defendant MARK LAROCQUE was operating at the time of the collision described in this Complaint;

c.     Negligently failing to keep the tractor-trailer that Defendant MARK LAROCQUE was operating at the time of the collision described in this Complaint in proper repair and working order;

d.     Negligently hiring or contracting with Defendant MARK LAROCQUE to drive the tractor-trailer at issue;

e.     Negligently training Defendant MARK LAROCQUE;

f.     Negligently entrusting Defendant MARK LAROCQUE to drive the tractor-trailer in a reasonably safe manner;

g.     Negligently retaining Defendant MARK LAROCQUE to drive the tractor-trailer at issue;

h.     Failing to supervise Defendant MARK LAROCQUE; and

i.     Otherwise failing to act as a reasonably prudent company under the circumstances.

64.

Defendant HEARTLAND EXPRESS was also negligent *per se* in the cause of this collision by operating the subject tractor-trailer in violation of O.C.G.A. § 40-6-240.

65.

As a direct and proximate result of the negligence of Defendant motor carrier HEARTLAND EXPRESS and its driver, MARK LAROCQUE, in the ensuing collision, Plaintiff's sustained injuries.

66.

Defendant motor carrier HEARTLAND EXPRESS, and its driver, MARK LAROCQUE, are liable for all damages allowed by law for the injuries, damages, and losses sustained by Plaintiff as a result of the collision described in this Complaint.

### COUNT II: *RESPONDENT STATE* LIABILITY OF DEFENDANT HEARTLAND EXPRESS
### FOR NEGLIGENCE OF ITS DRIVER MARK LAROCQUE

67.

Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

68.

At all relevant times, MARK LAROCQUE owed the following civil duties to Plaintiff but violated those duties in the following ways:

a.  Colliding into that was behind him;

b.  Failing to keep a proper lookout for traffic;

c.  Failing to make reasonable and proper observations while driving;

d.  Failing to drive at a reasonable and prudent speed under the conditions;

e.  Failing to obey traffic laws; and

f.  Otherwise failing to act reasonably and prudently as a driver should under the circumstances.

69.

Defendant MARK LAROCQUE was also negligent *per se* in the cause of this collision.

70.

HEARTLAND EXPRESS 's driver MARK LAROCQUE was also negligent *per se* in that he violated a number of laws and regulations governing his operation of a vehicle, including:

a.  Failure to Back Properly (O.C.G.A. § 40-6-240);

b.  Failing to Drive with Due Care (O.C.G.A. § 40-6-241); and

c.  Failing to Obey Traffic Laws (O.C.G.A. § 40-6-1).

71.

HEARTLAND EXPRESS 's driver MARK LAROCQUE was also negligent *per se* in the cause of this collision by operating the subject tractor-trailer in violation of O.C.G.A. § 40-8-7.

72.

As a direct and proximate result of the negligence of Defendant MARK LAROCQUE, Plaintiff sustained injuries, losses and damages.

73.

Defendant HEARTLAND EXPRESS is responsible and liable for the negligent acts of its driver, MARK LAROCQUE, under a theory of *respondeat superior* and control.

74.

As a direct and proximate result of the negligence and negligence *per se* of Defendant MARK LAROCQUE, Plaintiff incurred and is entitled to recover special damages, including, but not limited to, past and future medical expenses and past and future lost income, and other miscellaneous expenses, in an amount that will be proved at trial. Plaintiff is also entitled to recover for their general damages, including past and future pain and suffering and related damages.

**COUNT III: COMBINED AND CONCURRING LIABILITY FOR COMPENSATORY DAMAGES**

75.

Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

76.

Defendant HEARTLAND EXPRESS and/or its driver, MARK LAROCQUE, acted in a manner which either alone, and/or combined and concurring with the actions of the other such Defendant's acts of negligence described herein, directly and proximately caused the collision and Plaintiff's injuries, losses and damages.

77.

As a direct and proximate result of the negligence of Defendant HEARTLAND EXPRESS and its driver, MARK LAROCQUE, Plaintiff was physically injured, have suffered, and will continue to suffer pain, disability, loss of earning capacity, loss of enjoyment of life, anxiety, and related damages.

78.

As a direct and proximate result of the breaches of duty by Defendant HEARTLAND EXPRESS and its driver, MARK LAROCQUE, Plaintiff is entitled to recover fair and full compensation for all injuries and damages that have been suffered as a proximate result of the collision and that will be suffered in the future as a result of the collision, including, without limitation, all special damages and compensatory damages, medical expenses, lost wages, and other necessary expenses, as well as fair and full compensation for all pain and suffering, including physical pain, mental and emotional suffering, shock of impact, disability, worry, anxiety, loss of enjoyment of life, loss of capacity to work, and other categories of damages provided for under the law.

79.

To the extent that a jury awards Plaintiff compensatory damages in this case, Defendant HEARTLAND EXPRESS COMPANY is liable to pay Plaintiff such jury award at least up to the limits provided by its automobile liability policy of insurance in effect at the time of the collision.

**WHEREFORE**, Plaintiff prays that the following relief be granted:

a)     A trial by jury;

b)     For Summons and Complaint to issue against each Defendant;

c)     For judgment against each Defendant to compensate Plaintiff for past and future injuries, losses and damages;

d)     For judgment against each Defendant for attorneys' fees and expenses of litigation;

e)     Court costs, discretionary costs, and prejudgment interest; and

f)     For all such further and general relief which this Court deems just and proper.

Dated this 30th day of April, 2021.

WITHERITE LAW GROUP, LLC

/s/ R. Sean McEvoy
R. SEAN McEVOY
GEORGIA STATE BAR NUMBER 490918
ATTORNEY FOR PLAINTIFF

600 WEST PEACHTREE STREET, NW, SUITE 740
ATLANTA, GA 30308
TELEPHONE:    470-480-7540
FACSIMILE:      470-480-5095
E-MAIL:           SEAN.MCEVOY@WITHERITELAW.COM

State Court of Fulton County
**E-FILED**
21EV002677
4/30/2021 5:28 PM
Christopher G. Scott, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| JOSEPH CARTER; | |
| Plaintiff, | CIVIL ACTION |
| v. | FILE NO. _____ |
| HEARTLAND EXPRESS, INC.OF IOWA; and MARK LAROCQUE; | |
| Defendants. | |

### FIRST COMBINED RULE 34 REQUEST FOR PRODUCTION OF DOCUMENTS TO AND NOTICE OF TAKING DEPOSITION *DUCES TECUM* OF HEARTLAND EXPRESS, INC. OF IOWA

PLEASE TAKE NOTICE that on a date to be agreed upon in the future, commencing at a time and place to be agreed upon by the parties, in this civil action, counsel for plaintiff will take the deposition of the corporate representative(s) designated by HEARTLAND EXPRESS, INC. OF IOWA (hereinafter referred to herein as "HEARTLAND EXPRESS") pursuant to O.C.G.A. § 9-11-30(b)(6) on the subjects listed below. Said deposition will be conducted and shall continue from day to day thereafter until completed.

This deposition will be taken upon oral examination, before an agent authorized by law to take depositions and may also be recorded by video. This deposition will also be taken for all purposes allowed under the Georgia Civil Practice Act. All corporate designees will be deposed, as well, in her or her individual capacity at the deposition.

**Legal Requirement for Designees**

Pursuant to O.C.G.A. § 9-11-30(b)(6), HEARTLAND EXPRESS shall designate one or more persons to testify about each of the subject matters or DOCUMENTS described herein. Pursuant to O.C.G.A. § 9-11-30(b)(6), HEARTLAND EXPRESS shall designate one or more officers, directors, or managing agents, or other persons who consent to do so, to testify on its behalf, and HEARTLAND EXPRESS may state the matters on which each person designated will testify. Each person so designated by HEARTLAND EXPRESS shall testify about matters known or reasonably available to the organization.

Each person so designated by HEARTLAND EXPRESS shall be prepared by HEARTLAND EXPRESS to testify as to all information known or reasonably available to HEARTLAND EXPRESS collectively regarding the subject matter(s) and/or DOCUMENTS for which they are designed.  By producing an unprepared designee, HEARTLAND EXPRESS may be subjecting itself to the imposition of sanctions. So, please govern yourself accordingly.[1]

---

[1] ""The [organization] must prepare the designee to the extent matters are reasonably available, whether from DOCUMENTS, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (*citation omitted*). That preparation must enable the designee to "give complete, knowledgeable, and binding answers on behalf of the corporation." *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989). If the deponent cannot answer questions regarding the designated subject matter, "the corporation has failed to comply with its [Rule 1.310(b)(6)] obligation and may be subject to sanctions . . . ." *King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995)."

**FIRST COMBINED RULE 34NON-PARTY REQUEST FOR PRODUCTION OF DOCUMENTS TO AND NOTICE OF TAKING DEPOSITION *DUCES TECUM* OF HEARTLAND EXPRESS, INC. OF IOWA – Page 2**

## RULE 34 Document Production Required

Pursuant to O.C.G.A. §§ 9-11-30(b)(5) and 9-11-34, HEARTLAND EXPRESS shall produce within forty-five (45) days of the service of this First Combined Request For Production Of Documents To Defendant And Notice Of Taking Videotaped Deposition *Duces Tecum* Of Defendant all responsive DOCUMENTS described herein.

## Definitions

a.  The terms "DOCUMENT" and "DOCUMENTS" are defined broadly to include anything upon which information, data, sound and/or images are contained regardless of media, regardless of how maintained (physically, electronically, or otherwise) and regardless of what it's called. The term includes, but is not limited to, all papers, records, files, correspondence, reports, meeting minutes, memoranda, notes, diaries, notebooks, contracts, agreements, leases, accounts, orders, invoices, statements, bills, checks, vouchers, orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, directives, forms, manuals, journals, electronically stored information, e-mails, e-mail attachments, data sheets, worksheets, statistical compilations, microfilms, computer records (including printouts, files, partitions, hard drives, disks or other magnetic storage media), tapes, photographs (prints, negatives, slides, and electronic), drawings, films, videotapes, pictures, and recordings.  Includes all non-identical copies of DOCUMENTS, all attachments to DOCUMENTS, and both the front and rear of all pages that contain content.

b.  The term "SUBJECT COLLISION" as used herein is defined as the collision at issue in this case and described in the Complaint.

c.  The term "DRIVER" as used herein refers to Defendant MARK LAROCQUE

## Subject Matters and Documents Requested

The subject matters and DOCUMENTS requested are as follows:

### Defendant HEARTLAND EXPRESS

1.  HEARTLAND EXPRESS safety philosophy and mission statements, as such relate to the operation of company vehicles by its employees or agents.

    a.  Produce all DOCUMENTS setting forth this safety philosophy.

2.  What HEARTLAND EXPRESS expects of its employee/agent/independent contractor drivers in connection with safety, honor, integrity, veracity, attitude, and the operation of commercial motor vehicles.

    a.  Produce all DOCUMENTS setting forth what HEARTLAND EXPRESS expects of its employee/agent/independent contractor drivers in connection with safety, defensive driving, honor, integrity, veracity, attitude, and the operation of commercial motor vehicles.

3.  The identity of the HEARTLAND EXPRESS safety officer that is responsible for ensuring that HEARTLAND EXPRESS'S employee/agent/independent contractor drivers are properly trained and actually do drive in a reasonably safe manner and defensively when operating over public roadways, as of date of the SUBJECT COLLISION. If you contend there is no "safety officer," please provide the identity of the person in charge of driving safety at the time of the incident made the basis of this lawsuit, and the person in charge of safety's duties at the time.

4.  HEARTLAND EXPRESS policies, procedures, practices, guidelines, instructions and expectations for its management and/or employee/agent/independent contractor drivers regarding the following areas and all DOCUMENTS that set forth or explain such policies, procedures, practices, guidelines, instructions and expectations:

    a.  HEARTLAND EXPRESS hiring and employment qualifications for those persons who would be driving commercial motor vehicles;
    b.  Driver qualification;
    c.  Driver training;
    d.  Driving practices;
    e.  Defensive driving;
    f.  Supervision of employee/agent/independent contractor drivers;
    g.  Accident investigation, review (e.g., review board) and reporting;
    h.  Accident preventability and/or root cause determinations;
    i.  Employee discipline;
    j.  Employee termination;
    k.  Document retention.
    l.  Produce all such policies, procedures, practices, guidelines, instructions and expectations, including all DOCUMENTS evidencing the same; and
    m.  Produce all DOCUMENTS evidencing or related to the topics described in the foregoing subparts "a" through "k."

5.  The relationship (e.g., employee, agent, independent contractor, etc.) between HEARTLAND EXPRESS and DRIVER throughout the time DRIVER worked with HEARTLAND EXPRESS.

    a.  Produce all DOCUMENTS evidencing this relationship, including but not limited to contracts, leases or other DOCUMENTS governing the relationship.

6.  The manner in which DRIVER was compensated for her work with HEARTLAND EXPRESS.

    a.  Produce all DOCUMENTS evidencing payments made to DRIVER, including but not limited to all settlement statements, drayage statements and any other documentation of charges back to DRIVER.

7. DRIVER's job duties, activities and responsibilities while working for HEARTLAND EXPRESS as of the date of the SUBJECT COLLISION.

    a. Produce all DOCUMENTS setting forth DRIVER'S job duties, activities and responsibilities while working for HEARTLAND EXPRESS as of the date of the SUBJECT COLLISION.

8. HEARTLAND EXPRESS qualification of DRIVER to operate a vehicle while operating such vehicles over public roadways.

    a. Produce all DOCUMENTS used to qualify DRIVER to operate a commercial motor vehicle for HEARTLAND EXPRESS.

    b. Produce all DOCUMENTS used to qualify DRIVER to drive a commercial motor vehicle for HEARTLAND EXPRESS.

### DEFENDANT DRIVER MARK LAROCQUE

9. DRIVER's medical, physical and psychological condition for the time-period beginning three years before the SUBJECT COLLISION to present. This includes, but is not limited to, any assessment for and treatment for sleep apnea and/or other fatigue related conditions.

    a. Produce all DOCUMENTS evidencing DRIVER'S medical, physical and psychological condition, including but not limited to all medical files, workers compensation files, disability files, and/or drug or alcohol testing files.

10. DRIVER's driving and criminal history for the seven (7) years preceding the SUBJECT COLLISION.

    a. Produce all DOCUMENTS evidencing DRIVER'S driving history and criminal history for the seven (7) years preceding the SUBJECT COLLISION through the present date.

11. All training HEARTLAND EXPRESS provided to DRIVER having anything to do with defensive driving and the reasonably safe operation of commercial motor vehicles over the public roadways and/or the compliance with the regulations and laws of the State of Georgia.

    a. Produce all DOCUMENTS evidencing the above training, testing to demonstrate that training objectives were met, and/or the successful completion of the above training, as well as supervision in the field showing actual compliance.

    b. Produce all DOCUMENTS and training materials of any kind (presentations, handouts, booklets, books, videos, simulations, tests, answers, answer keys, etc.) that were used in connection with the above training.

12. All supervisory actions, corrective actions, counseling actions, and disciplinary actions of any type ever taken regarding DRIVER, while he has driven for HEARTLAND EXPRESS. This includes all communication between anyone at HEARTLAND EXPRESS and DRIVER regarding any safety related issue or employment related issue. This would also include termination in the event that DRIVER has been terminated.

    a. Produce all DOCUMENTS relating to and/or addressing the above subjects.

### DISPATCH AND ROUTING

13. The trip that DRIVER was on at the time of the Subject Collision:
    a. DRIVER'S intended route and whether he had deviated from that route;
    b. Where DRIVER was coming from and where he was going to at the time of the Subject Collision;
    c. When DRIVER was expected at her next stop (when the Subject Collision occurred) and whether he was on time for her expected next stop;

### EQUIPMENT

14. Onboard Systems:

    a. The identification of all systems and devices of any kind that were on the tractor and/or trailer operated by DRIVER at the time of the Subject Collision that are capable of monitoring, capturing, recording, and/or transmitting any data and/or communications (e.g., EOBR; GPS, satellite, cellular and other systems; engine, powertrain and brake control modules; trip or event recorders, lane departure warning systems, communication systems, onboard camera systems, etc.);

    b. Explanation of how each system and device operates, what data it is capable of monitoring, capturing, recording, and/or transmitting, how such data is stored and retrieved and what reports are capable of being run based upon the data and/or communications;

    c. The steps taken by anyone to preserve and, if applicable, to download the above-referenced data and communications;

    d. All persons involved in the process of preserving and/or downloading and/or analyzing the referenced data and communications;

    e. All data, communications and reports of any kind from each system and device that contains any data, information, depiction and/or communications related to the tractor or trailer at issue within seventy-two (72) hours of the Subject Collision;

    f. Produce all of the above referenced data and communications and all reports related thereto; and

g.  Produce all DOCUMENTS showing the purpose, capabilities functionalities, and operation of each such on-board system. including but not limited to all training materials, service contracts, manuals, instructions, and handbooks provided by the vendor supplying each on-board system and all materials created by HEARTLAND EXPRESS regarding the use and operation of each on-board system.

15.  The weight of the truck at the time of the Subject Collision.

a.  Produce all DOCUMENTS showing same.

16.  The speed of the truck at the time of the Subject Collision.

a.  Produce all DOCUMENTS showing same.

17.  Whether DRIVER performed a proper pre-trip inspection prior to operating the truck on the date of the Subject Collision.

a.  Produce all pre-trip and post-trip driver inspections of the tractor and trailer involved in the Subject Collision for the thirty (30) days leading up to and including the collision at issue and for the thirty (30) days following the Subject Collision.

18.  HEARTLAND EXPRESS inspection and maintenance of the subject truck for the period beginning 30 days prior to the date of the collision and ending 30 days after such date.

a.  Produce all DOCUMENTS evidencing all such inspections and maintenance.

## SUBJECT COLLISION

19. The identity of each employee/agent/independent contractor of HEARTLAND EXPRESS, who came to the scene of the Subject Collision, each such person's position with HEARTLAND EXPRESS, why each such person came to the scene, and what each such person did at the scene, as well as the substance of communications made by each such person and any other person at the scene.

a.  Produce all DOCUMENTS generated by each employee/agent/independent contractor of HEARTLAND EXPRESS, who came to the scene of the Subject Collision, evidencing the Subject Collision and/or communications made bey each such person and any other person at the scene.

20. The identity of each employee of HEARTLAND EXPRESS, who in the ordinary course of HEARTLAND EXPRESS business has been involved in any way in the investigation of the SUBJECT COLLISION, all steps taken by each such person during any such investigation, all evidence, information, and/or facts collected by each such person, the conclusions reached by each such person.

   a. Produce all DOCUMENTS generated by each such person and/or HEARTLAND EXPRESS concerning the investigation of the SUBJECT COLLISION and conclusions reached regarding the cause and/or contributing factors leading to the same.

21. The identity of each person who communicated with DRIVER regarding the SUBJECT COLLISION.

   a. Produce all DOCUMENTS memorializing or evidencing to each such communication.

22. HEARTLAND EXPRESS understandings of how and why the SUBJECT COLLISION occurred; how such could be avoided in the future; all causes of and contributing factors to the SUBJECT COLLISION; and how HEARTLAND EXPRESS reached these understandings, including all investigations, reviews, evaluations, determinations, and actions by any supervisor,  board, group, committee or person(s) concerning preventability, root cause, fault, avoid ability, Dot reportability and/or disciplinary determinations arising from the SUBJECT COLLISION.

   a. Produce all DOCUMENTS evidencing the above.

23. All alcohol and drug tests administered to DRIVER by HEARTLAND EXPRESS at any time, including following the Subject Collison, and the results thereof.

   a. Produce all DOCUMENTS evidencing such tests, results and any corrective or disciplinary actions arising from the same.

## INSURANCE COVERAGE

24. Insurance coverage available for the claimed losses sustained in this case (including self-insured retentions, deductibles, claims of self-insurance and all primary, umbrella and excess coverages) and all reservation of rights letters sent by any insurer to HEARTLAND EXPRESS and/or DRIVER   in connection with the SUBJECT COLLISION.

   a. Produce all DOCUMENTS evidencing such coverage and limits of coverage and assertions by employees of insurance coverage or of self-insurance.

## DOCUMENT PRODUCTION

25. The purpose and process for the receipt, creation, duplication, and/or storage of the documents responsive to the Request for Production made a part of this Notice of Taking Videotaped Deposition of Defendant HEARTLAND EXPRESS.

26. All retention and destruction policies and procedures applicable to the documents and/or data responsive to the Request for Production made a part of this Notice of Taking Videotaped Deposition of Defendant HEARTLAND EXPRESS.

**FIRST COMBINED RULE 34NON-PARTY REQUEST FOR PRODUCTION OF DOCUMENTS TO AND NOTICE OF TAKING DEPOSITION *DUCES TECUM* OF HEARTLAND EXPRESS, INC. OF IOWA – Page 8**

27. The efforts undertaken by HEARTLAND EXPRESS  to ensure that all DOCUMENTS responsive to the Request for Production made a part of this Notice of Taking Videotaped Deposition of Defendant HEARTLAND EXPRESS are complete and that all responsive DOCUMENTS have been produced as well as a full and complete explanation as to why any document was not fully produced and/or was withheld from production.


Served with the Complaint.

WITHERITE LAW GROUP, LLC

/s/ R. Sean McEvoy
R. SEAN MCEVOY
GEORGIA STATE BAR NUMBER 490918
*ATTORNEY FOR PLAINTIFF*

600 W. PEACHTREE ST., NW, SUITE 740
ATLANTA, GEORGIA 30308
TELEPHONE:      470-480-7540
FACSIMILE:      470-480-5095
E-MAIL:          sean.mcevoy@witheritelaw.com

**FIRST COMBINED RULE 34NON-PARTY REQUEST FOR PRODUCTION OF DOCUMENTS TO AND NOTICE OF TAKING DEPOSITION *DUCES TECUM* OF HEARTLAND EXPRESS, INC. OF IOWA – Page 9**

State Court of Fulton County
**E-FILED**
21EV002677
4/30/2021 5:28 PM
Christopher G. Scott, Clerk
Civil Division

**IN THE STATE COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

JOSEPH CARTER;

    Plaintiff,

                         CIVIL ACTION

v.

                         FILE NO. _____

HEARTLAND EXPRESS, INC.OF IOWA;
and MARK LAROCQUE;

    Defendants.

**PLAINTIFF'S FIRST COMBINED INTERROGATORIES
AND REQUESTS FOR ADMISSIONS SERVED WITH THE COMPLAINT
TO DEFENDANT HEARTLAND EXPRESS, INC. OF IOWA**

    COME NOW Plaintiff in the above-captioned lawsuit and pursuant to O.C.G.A. §§ 9-11-33 and 9-11-36 hereby propound the following Interrogatories and Requests for Admissions to Defendant HEARTLAND EXPRESS, INC. OF IOWA (hereinafter "HEARTLAND EXPRESS") for response under oath to the subject interrogatories, pursuant to Rule 33 of the Georgia Civil Practice Act, and as required by law.

**DEFINITIONS**

    As used herein, the terms listed below are defined as follows:

1. The term "**Document**" as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps,

**PLAINTIFF'S FIRST COMBINED INTERROGATORIES AND REQUESTS FOR ADMISSIONS
SERVED WITH THE COMPLAINT TO DEFENDANT HEARTLAND EXPRESS INC. – Page 1**

analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings.  Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

2.  "**Person**" means any natural person, corporation, partnership, proprietorship, association, organization, group of persons, or any governmental body or subdivision thereof.

3.  (a)  "**Identify**" with respect to any "**person**" or any reference to stating the "**identity**" of any "**person**" means to provide the name, home address, telephone number, business name, business address, and business telephone number of such person, and a description of each such person's connection with the events in question.

(b)  "**Identify**" with respect to any "**document**" or any reference to stating the "**identification**" of any "**document**" means to provide the title and date of each such document, the name and address of the party or parties responsible for the preparation of each such document, the name and address of the party who requested or required the preparation of the document or on whose behalf it was prepared, the name and address of the recipient or recipients of each such document, and the names and addresses of any and all persons who have custody or control of each such document, or copies thereof.

4.  "**Similar**" shall have the meaning given in the American Heritage Dictionary, which is "showing some resemblance; related in appearance or nature; alike but not identical."  As used here, the word "similar" shall not be limited as if modified by the word "substantially" and shall

not mean "the same".  If you limit the information provided because you use another interpretation of the word "similar," please state the interpretation you are using and reveal the nature of the information withheld.

5.    The terms "**and**" as well as "**or**" shall be each construed conjunctively and disjunctively as necessary to bring within the scope of each interrogatory and request for documents all information and documents that might otherwise be construed to be outside its scope.  The term "**and/or**" shall be construed likewise.

6.    Whenever necessary to bring within the scope of an interrogatory or request for production of documents any information or document that might otherwise be construed to be outside its scope:  (i) the use of a verb in any tense shall be construed as the use of the verb in all other tenses; (ii) the use of the singular shall be construed as the use of the plural and vice versa; and (iii) "**any**" includes "all," and "**all**" includes "any."

7.    With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

8.    "**Subject Collision**" means the collision described in the Complaint.

9.    "**HEARTLAND EXPRESS**," "**You**", "**Your**," or "**Yours**" means Defendant HEARTLAND EXPRESS INC.

10.   "**MARK LAROCQUE**" as used herein refers to and means Defendant Driver MARK LAROCQUE.

## REQUESTS FOR ADMISSION

**REQUEST NO. 1**        HEARTLAND EXPRESS was the owner of the truck that was involved in the Subject Collision.

**REQUEST NO. 2**        At the time of the Subject Collision, MARK LAROCQUE was an agent of HEARTLAND EXPRESS.

**REQUEST NO. 3**        At the time of the Subject Collision, MARK LAROCQUE was an employee of HEARTLAND EXPRESS.

**REQUEST NO. 4**        At the time of the Subject Collision, MARK LAROCQUE was acting within the course and scope of his employment or agency with HEARTLAND EXPRESS.

**REQUEST NO. 5**        At the time of the Subject Collision, MARK LAROCQUE was operating the truck owned by HEARTLAND EXPRESS.

**REQUEST NO. 6**        At the time of the Subject Collision, MARK LAROCQUE was operating the truck with the permission of HEARTLAND EXPRESS.

**REQUEST NO. 7**        At the time of the Subject Collision, MARK LAROCQUE was operating the truck with the knowledge of HEARTLAND EXPRESS.

**REQUEST NO. 8**        At the time of the Subject Collision, MARK LAROCQUE was operating the truck as trained by HEARTLAND EXPRESS.

**REQUEST NO. 9**        HEARTLAND EXPRESS 's corporate name was properly stated in the Complaint.

**REQUEST NO. 10**      Venue is proper in this Court.

**REQUEST NO. 11**      Jurisdiction is proper in this Court.

**REQUEST NO. 12**      Service of process upon HEARTLAND EXPRESS in this civil action was proper.

**REQUEST NO. 13**      Service of process upon HEARTLAND EXPRESS in this civil action was legally sufficient.

**REQUEST NO. 14**     At the time of the collision described in this Complaint, MARK LAROCQUE was operating a tractor-trailer.

**REQUEST NO. 15**     At the time of the collision described in this Complaint, MARK LAROCQUE was operating a tractor-trailer owned by Defendant HEARTLAND EXPRESS.

**REQUEST NO. 16**     At the time of the collision described in this Complaint, MARK LAROCQUE was operating a tractor-trailer with the permission of Defendant HEARTLAND EXPRESS over the public roadways in Floyd County, Georgia.

**REQUEST NO. 17**     MARK LAROCQUE was responsible for the safe and reasonable operation of a commercial motor vehicle over the public roadways within and throughout the State of Georgia.

**REQUEST NO. 18**     At all times material hereto, MARK LAROCQUE was subject to the Federal Motor Carrier Safety Regulations and all subsequent amendments thereto, promulgated, approved, and adopted by the United States Department of Transportation contained in Title 49 of the Code of Federal Regulations as adopted by the State of Georgia.

**REQUEST NO. 19**     .

**REQUEST NO. 20**     On August 20, 2020, the Defendant MARK LAROCQUE was operating the tractor-trailer on Prosperity Way.

**REQUEST NO. 21**     On August 20, 2020, the Defendant MARK LAROCQUE was operating the tractor-trailer on Prosperity Way waiting to enter Lowe's Distribution Private Lot.

**REQUEST NO. 22**     On August 20, 2020, the Defendant MARK LAROCQUE was operating the tractor-trailer on Prosperity Way in the Lowe's Distribution Private Lot, waiting in line.

**REQUEST NO. 23**     On August 20, 2020, at the same time the Plaintiff JOSEPH CARTER in his tractor-trailer on Prosperity Way in the Lowe's Distribution Private Lot, waiting in line, behind the Defendant.

**REQUEST NO. 24**   On August 20, 2020, suddenly and without warning, the Defendant's tractor-trailer starts to reverse backwards.

**REQUEST NO. 25**   On August 20, 2020, Defendant's trailer slammed into Plaintiff's tractor/truck.

**REQUEST NO. 26**   On August 20, 2020, the Defendant's trailer slammed into the Plaintiff's tractor/truck, causing damage to his vehicle and injury to his person.

**REQUEST NO. 27**   Diagram No. 1 below is a not to scale diagram depicting the collision described in this Complaint.





Diagram No. 1

**REQUEST NO. 28**   Officer Webb investigated this collision described in this Complaint.

**REQUEST NO. 29**   Officer Webb concluded that the collision described in this Complaint was solely caused by Defendant MARK LAROCQUE.

**REQUEST NO. 30**   Defendant MARK LAROCQUE violated of OCGA § 40-6-240 at the time of the collision described in this Complaint, which caused the collision described in this Complaint.

**REQUEST NO. 31**    Defendant HEARTLAND EXPRESS conducted its own investigation into the cause of the subject collision.

**REQUEST NO. 32**    Defendant HEARTLAND EXPRESS concluded that Defendant MARK LAROCQUE violated of OCGA § 40-6-240 at the time of the collision described in this Complaint.

**REQUEST NO. 33**    Defendant HEARTLAND EXPRESS concluded that Defendant MARK LAROCQUE violated of OCGA § 40-6-240 at the time of the collision described in this Complaint, which caused the collision described in this Complaint.

**REQUEST NO. 34**    Defendant HEARTLAND EXPRESS concluded that Defendant MARK LAROCQUE was the sole cause of the subject collision.

**REQUEST NO. 35**    No act or failure to act on the part of any plaintiff caused or contributed to the cause of the collision described in this Complaint.

**REQUEST NO. 36**    No act or failure to act on the part of any third party caused or contributed to the collision described in this Complaint.

**REQUEST NO. 37**    No act or failure to act on the part of any third party caused or contributed to the injuries suffered by plaintiff in the collision described in this Complaint.

**REQUEST NO. 38**    No act or failure to act on the part of a plaintiff caused or contributed to the cause of his claimed injuries.

**REQUEST NO. 39**    No act or failure to act on the part of any third party caused or contributed to the collision described in this Complaint.

**REQUEST NO. 40**    Plaintiff was an innocent victim of the collision described in this Complaint.

**REQUEST NO. 41**    The collision described in this Complaint caused plaintiff to suffer injuries, losses, and damages.

**REQUEST NO. 42**    Defendant HEARTLAND EXPRESS agrees that defendants should fully and fairly compensate plaintiff for all injuries, losses, and damages that plaintiff proves were caused by the collision described in this Complaint.

**REQUEST NO. 43**     MARK LAROCQUE gave a recorded statement to one or more insurance companies that provided liability coverage for the truck that LAROCQUE was driving at the time of the Subject Collision.

**REQUEST NO. 44**     No improper act of the plaintiff caused or contributed to the cause of the Subject Collision.

**REQUEST NO. 45**     No failure to act by either plaintiff caused or contributed to the cause of Subject Collision.

**REQUEST NO. 46**     No improper act or failure to act on the part of any third party to this action caused or contributed to the cause of the Subject Collision.

**REQUEST NO. 47**     MARK LAROCQUE's negligent acts and/or omissions were the sole cause of the Subject Collision.

**REQUEST NO. 48**     MARK LAROCQUE's negligent acts and/or omissions were a contributing cause of the Subject Collision.

**INTERROGATORIES**

**INTERROGATORY NO. 1**     If you contend that plaintiff has sued the wrong party or that your name is incorrectly stated in this lawsuit, please explain the basis for your contention and identify the correct legal entity for the correct party in interest to this suit.

**INTERROGATORY NO. 2**     For each liability insurance policy that you had in place at the time of the Subject Collision, state the name of insurer; the policy number; the limits of coverage; the name(s) of all insureds; and whether any insurer has offered a defense under a reservation of rights or otherwise contested coverage for the subject case. Please note that this interrogatory is requesting information relating to ALL insurance coverage including excess coverage.

Please provide the weight of the subject truck at the time of the Subject Collision.

**INTERROGATORY NO. 3**   Explain the relationship between Defendant HEARTLAND EXPRESS and Defendant Driver LAROCQUE at the time of the Subject Collision including his employment status (e.g., leased driver, company driver, etc.), how she was compensated for driving (e.g., by the hour, by the load, by the mile, salary, or other) and when the relationship began and ended.

**INTERROGATORY NO. 4**   If you maintain that Defendant Driver LAROCQUE was not acting within the course and scope of his employment or agency at the time of the Subject Collision, explain the basis for your contention and identify documents and witnesses that support your contention.

**INTERROGATORY NO. 5**   Identify and explain all communications of any kind between Defendant Driver LAROCQUE and anyone acting for or on behalf of Defendant HEARTLAND EXPRESS during the twenty-four (24) hours <u>before</u> and <u>after</u> the Subject Collision. For each communication, identify the method of communication (cell phone, QualComm, other), time of communication, persons involved, and the general subject.

**INTERROGATORY NO. 6**   Identify all Defendant HEARTLAND EXPRESS 's policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions that were in effect for Defendant Driver LAROCQUE at the time of the Subject Collision, that dealt with or addressed defensive and/or safe driving practices and procedures.

**INTERROGATORY NO. 7**   Identify all Defendant HEARTLAND EXPRESS'S policies, procedures, rules, guidelines, directives, manuals, handbooks and instructions and training applicable to Defendant Driver LAROCQUE regarding safe and defensive driving practices and procedures.

**INTERROGATORY NO. 8**     Describe in detail when and how you first became aware that Defendant Driver LAROCQUE was involved in the Subject Collision including in your answer the identity of all persons involved in the investigation of the Subject Collision, their role and position and what information was conveyed.

**INTERROGATORY NO. 9**     State whether you maintain that either Plaintiff or any non-party has any responsibility of any kind for causing the HEARTLAND EXPRESS and/or the damages alleged in the Complaint and provide a detailed description of the basis for your position, including the identity of all person(s) who have any knowledge regarding this issue and/or all documents evidencing your position.

**INTERROGATORY NO. 10**    Identify all persons who to your knowledge were present at the scene of the Subject Collision at any time in the forty-eight (48) hours after the Subject Collision and explain their role, why they were at the scene and what actions they took.

**INTERROGATORY NO. 11**    Identify all person(s) who you to your knowledge have or may have any relevant information regarding: the Subject Collision; the facts leading up to the Subject Collision; the investigation of the Subject Collision; any party to this action; any vehicles involved in the Subject Collision; and/or any claims or defenses raised in this action. The purpose of this Interrogatory is to identify all witnesses whom Defendant HEARTLAND EXPRESS believes may have relevant testimony of any kind in connection with this case.

**INTERROGATORY NO. 12**    Identify all photographs, motion pictures, maps, plats, drawings, diagrams, videotapes, or other tangible or documentary evidence depicting the scene of the Subject Collision and/or any person or vehicle involved in the Subject Collision.

**INTERROGATORY NO. 13**    Please identify all mechanical defects in your truck that caused in whole or in part your driver to lose control of the truck and/or the collision described in the Complaint, as well as all documents evidencing the existence of such defect(s) and/or the repair of such defects.

**INTERROGATORY NO. 14**   Please identify all person(s) who have any knowledge or information concerning the inspection, maintenance and repair of the truck involved in the collision described in the Complaint, as well as all documents evidencing inspections, maintenance and repair of the subject truck.

**INTERROGATORY NO. 15**   Did Defendant HEARTLAND EXPRESS make any effort to perform any accident review, any avoidable/non-avoidable accident determination, any root cause analysis, any DOT reportability determination or any type of investigation or analysis to discover the cause(s) or contributing cause(s) of the Subject Collision and/or to evaluate whether your driver should be disciplined for any action or inactions related to the Subject Collision? If so, please identify all person(s) involved, all documents and information reviewed, and all determinations.

**INTERROGATORY NO. 16**   Identify each person Defendant HEARTLAND EXPRESS expects to call as an expert witness at trial including in your response a summary of each opinion the expert holds in regards to this case, the factual basis for each such opinion, a list of all documents and evidence of any kind provided to the expert for review and a list of all documents and evidence of any kind that support each opinion.

**INTERROGATORY NO. 17**   Identify each person who was involved in responding to each of the Requests for Admission served upon you in this civil action.

**INTERROGATORY NO. 18**   Identify each person who provided information to the person verifying these interrogatory responses to be used or potentially used in answering the interrogatories.

**INTERROGATORY NO. 19**   For each of Plaintiff's First Request for Admissions to Defendant HEARTLAND EXPRESS that you did not admit without qualification, explain in detail the reason for your refusal to admit and identify all persons and documents that support your response.

Served with the Complaint upon all Defendants.

**WITHERITE LAW GROUP, LLC**
/s/ R. Sean McEvoy
R. SEAN MCEVOY
GEORGIA STATE BAR NUMBER 490918
***ATTORNEY FOR PLAINTIFF***

600 W. PEACHTREE ST., NW, SUITE 740
ATLANTA, GEORGIA 30308
TELEPHONE:      470-480-7540
FACSIMILE:      470-480-5095
E-MAIL:      sean.mcevoy@witheritelaw.com

**PLAINTIFF'S FIRST COMBINED INTERROGATORIES AND REQUESTS FOR ADMISSIONS SERVED WITH THE COMPLAINT TO DEFENDANT HEARTLAND EXPRESS INC. – Page 12**